NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH M. POBER, M.D., *on assignments of Janette D., Megin K., Brenda K., Gary N., Lauren S., and Brenda T.,*<br><br>Plaintiff,<br>v.<br><br>CIGNA HEALTH AND LIFE INSURANCE COMPANY,<br><br>Defendant. | Civil Action No. 17-5382 (JLL)<br><br>OPINION |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Defendant and Counterclaimant Cigna Health and Life Insurance Company's Motion for Summary Judgment as to its first counter-claim. (ECF No. 28). Plaintiff Dr. Joseph M. Pober opposes this motion and has cross-moved for summary judgment as to the same counter-claim. (ECF No. 37). Both motions are brought pursuant to Federal Rule of Civil Procedure 56. Defendant replied to Plaintiff's opposition and opposed Plaintiff's cross-motion. (ECF No. 43). Plaintiff also replied to Defendant's opposition to Plaintiff's cross-motion. (ECF No. 47). This matter is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the following reasons, both motions are denied.

### I.  BACKGROUND[1]

---

[1] This background is taken from the parties' statements of material facts, pursuant to Local Civil Rule 56.1. (ECF No. 30, Defendant's Rule 56.1 Statement of Facts ("Def. SMF"); ECF No. 37-17, Plaintiff's Response to Defendants' Statement of Facts ("Pl. Opp. SMF"), and Supplemental Facts ("Pl. SMF"); and ECF No. 44, Defendant's Reply to Plaintiff's Supplemental Facts ("Def. Opp. SMF")). To the extent that Plaintiff admits to any Material Facts as stated by Defendant, the Court will cite only to "Def. SMF" and the relevant paragraph number.

It is uncontested that Plaintiff is a plastic surgeon specializing in the removal of skin cancer and that Defendant is an insurance provider for some of Plaintiff's patients. (*See, e.g.*, ECF No. 37-18 ¶¶ 1, 4). In December of 2015, there was a dispute between the parties pertaining to Plaintiff's alleged improper submission of bills to Defendant for procedures performed by Plaintiff. (Def. SMF ¶¶ 1–2). Defendant claimed that Plaintiff submitted, or caused to be submitted, false and fraudulent information on claims to Defendant by reporting a higher level of service than was actually performed. (Def. SMF ¶ 3). Based on these submissions, Defendant alleged that Plaintiff was improperly reimbursed $393,715.88. (Def. SMF ¶ 4).

On February 29, 2016, the parties participated in a private mediation where they were both represented by counsel. (Def. SMF ¶¶ 5–8). At the end of the mediation, the parties drafted and signed a document titled "Term Sheet." (Def. SMF ¶ 9). It is disputed by the parties whether the Term Sheet was the confirmation of an agreement or merely a memorandum of certain items that were discussed at the mediation subject to further negotiation. (Def. SMF ¶ 9; Pl. Opp. SMF ¶ 9). Regardless, the Term Sheet provides as follows:

> Parties will
> (1) Exchange mutual general releases.
> (2) Group will terminate from [Defendant] by no later than March 30, 2016.
> (3) [Plaintiff] will pay $175,000, $ $17,500 on signing and $17,500 on the 15th of every month, starting March 15, 2016 until paid in full.
> (4) [Plaintiff] and his [Professional Corporation ("P.C.")] will not submit any claims to [Defendant] for services performed on any employee of the P.C. (or family member covered by the P.C. policy).
> (5) Group will never reapply to [Defendant] for health insurance coverage.

(Def. SMF ¶ 10).[2] In accordance with the first paragraph of the Term Sheet, Defendant sent Plaintiff a settlement agreement and general release for Plaintiff to review and execute on March 2, 2016. (Def. SMF ¶ 11). Shortly thereafter, Plaintiff asked Defendant for a small reduction in

---

[2] The parties' submissions do not explain who or what the term "Group" is referring to in the Term Sheet.

the sum of each monthly installment, to which Defendant agreed, on the condition that the total amount due from Plaintiff be increased from $175,000 to $185,000. (Def. SMF ¶¶ 12–13). Defendant sent a revised settlement agreement and general release to Plaintiff which included the parties' agreed upon changes. (Def. SMF ¶ 14). However, Plaintiff did not sign the original agreement, the revised agreement, or the general release. (Def. SMF ¶¶ 15–16).

On June 16, 2017, Plaintiff filed a Complaint against Defendant in New Jersey state court, seeking reimbursement on claims for services that were denied by Defendant prior to the parties' February 29, 2016 mediation. (Def. SMF ¶ 18). Plaintiff asserted the following causes of action against Defendant: (I) Breach of Contract; (II) Failure to Make All Payments Pursuant to Member's Plan Under 29 U.S.C. § 1132(a)(1)(B); and (III) Breach of Fiduciary Duty Under 29 U.S.C. § 1132(a)(3), 29 U.S.C. § 1104(a)(1), and 29 U.S.C. § 1105(a). (ECF No. 1-1 ("Compl.") ¶¶ 20–42). On July 24, 2017, Defendant removed the case to this Court pursuant to 28 U.S.C. § 1441(a). (ECF No. 1). Subsequently, Defendant answered Plaintiff's Complaint and filed the following counter-claims against Plaintiff: (I) Breach of Settlement Agreement (The Term Sheet); and (II) Fraud. (ECF No. 10 ¶¶ 21–42). Magistrate Judge Joseph A. Dickson ordered limited discovery of "all communications between the parties related to the mediation," and directed the parties to file their dispositive motions as to Defendant's first counter-claim. (ECF No. 25).

## II. LEGAL STANDARD

Summary judgment is appropriate when, drawing all reasonable inferences in the non-movant's favor, there exists no "genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "[T]he moving party must show that the non-moving party has failed to establish one or more essential elements of its case on which the non-moving party has the burden

of proof at trial." *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

The Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). If a reasonable juror could return a verdict for the non-moving party regarding material disputed factual issues, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 249 ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

### III. ANALYSIS

The main issue before the Court is whether the Term Sheet is an enforceable contract that bars Plaintiff's claims. In this case, the Court must look to New Jersey law in analyzing whether the term sheet is an enforceable contract. *See Wilcher v. City of Wilmington*, 139 F.3d 366, 372 (3d Cir. 1998) (citing *Pennwalt Corp. v. Plough, Inc.*, 676 F.2d 77, 79 (3d Cir. 1982)). Under New Jersey law, an agreement to settle a lawsuit is a contract, which may be freely entered into and is enforceable by the courts. *Pascarella v. Bruck*, 190 N.J. Super. 118, 124–25 (App. Div. 1983) (quoting *Honeywell v. Bubb*, 130 N.J. Super. 130, 136 (App. Div. 1974)). A contract must have an offer and acceptance as well as sufficiently definite essential terms so that the performance to be rendered by each party is ascertainable with reasonable certainty.[3] *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 435 (1992) (citations omitted). The parties must also manifest an intention to be bound by the contract's essential terms. *Id.* (citations omitted). So long as the essential terms are present, the Court will enforce a settlement agreement despite the absence of a future, more

---

[3] A contract must also have consideration. *Excelsior Ins. Co. v. Pennsbury Pain Center*, 975 F. Supp. 342, 349 (D.N.J. 1996) (citing *Friedman v. Tappan Dev. Corp.*, 22 N.J. 523, 533 (1956)). Consideration is not at issue in this case, because, under the Term Sheet, Defendant would receive the benefit of being compensated by Plaintiff and Plaintiff would receive the benefit of settling any disputes alleged by Defendant. (ECF No. 11).

4

formalized, writing.[4] *Excelsior Ins. Co.*, 975 F. Supp. at 349 (citing *Berg Agency v. Sleepworld-Willingboro, Inc.*, 136 N.J. Super. 369, 373–74 (App. Div. 1975)).

Here, there is a genuine issue of material fact as to whether the Term Sheet was meant to be an enforceable agreement, as the parties have asserted two completely different narratives regarding the Term Sheet, which are both supported by evidence in the record. According to Defendant, the Term Sheet was a final and enforceable settlement agreement for all disputes between the parties, which was reached at the end of the mediation. (ECF No. 29 at 10–11). In making this assertion, Defendant relies on the fact that Plaintiff signed the Term Sheet at the end of the mediation, and that Defendant subsequently sent a formalized settlement agreement to Plaintiff. (Def. SMF ¶¶ 9, 11). Defendant also relies on the plain language of the Term Sheet to support his assertion, as it calls for a release, the price Plaintiff needs to pay Defendant, and that Defendant will stop insuring certain individuals referred to as "Group." (ECF No. 11). On the other hand, Plaintiff asserts that the Term Sheet is not a settlement agreement, but is merely evidence of preliminary negotiations that broke down. (ECF No. 37 at 10). Plaintiff relies on the fact that he never signed the agreements or releases sent by Defendant, and that the parties continued to negotiate essential terms, such as the amount Plaintiff needs to pay.[5] (Def. SMF ¶¶ 12, 15).

As shown above, the record contains evidence to support each of the parties' positions. However, the record does not strongly weigh in either party's favor, in part, because the language

---

[4] Plaintiff argues that the Term Sheet is missing an essential term because it does not require Defendant to review its denials of Plaintiff's billings, which was supposedly discussed at the mediation. (ECF No. 37 at 10). The Court rejects this argument. While such a term may have been desirable for Plaintiff, it was not essential to the agreement. *See Hackensack Univ. Med. Ctr. v. Yinglian Xiao*, 2018 U.S. Dist. LEXIS 76534, at *13–14 (D.N.J. May 7, 2018).

[5] Plaintiff emphasizes the fact that the parties changed the price that Plaintiff was required to pay Defendant under the Term Sheet to argue that the Term Sheet was not a contract. (ECF No. 37 at 17–19). However, the mere fact that the parties continued to flesh out details does not mean they could not be bound by the Term Sheet. *See Lahue v. Pio Costa*, 263 N.J. Super. 575, 596 (App. Div. 1993) (citations omitted). Rather, the parties continued negotiation is one factor that the Court is weighing in combination with the other evidence in the record.

of the Term Sheet is broad enough such that both Plaintiff and Defendant's narratives are plausible. Unlike the settlement agreements in several other cases, the Term Sheet begins with the words "Parties will," (ECF No. 11), instead of clarifying that the Term Sheet is a final settlement agreement between the parties. *See, e.g., Hackensack Univ. Med. Ctr.*, 2018 U.S. Dist. LEXIS 76534, at *5–6; *Thomas v. Lockhead Martin Aeroparts, Inc.*, 2015 U.S. Dist. LEXIS 35134, at *7–8 (W.D. Pa. Mar. 20, 2015). Furthermore, certain provisions within the Term Sheet are broadly written. For example, the Term Sheet's provision stating that the parties were going to "[e]xchange mutual general releases" does not specify what claims the parties intended to release. (ECF No. 11). With only the sparse language of the Term Sheet, and the affidavits and emails provided by the parties, it would be inappropriate for the Court to determine at summary judgment what claims the parties intended to preclude under the Term Sheet.[6] *Bilotti v. Accurate Forming Corp.*, 39 N.J. 184, 204 (1963) (citing *Breen v. Peck*, 28 N.J. 351, 355 (1958)). Therefore, the Court finds that the enforceability of the Term Sheet should be left for the trier of facts to determine. Accordingly, the Court denies both motions.

## IV. CONCLUSION

For the aforementioned reasons, the Court hereby denies Defendant's Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment. An appropriate Order follows this Opinion.

Date: May 29th, 2018

JOSE L. LINARES
Chief Judge, United States District Court

---

[6] Defendant points to several cases to argue that the Term Sheet's language is sufficiently definite for the Court to find, as a matter of law, that Plaintiff forfeited all claims against Defendant, including those brought in this action. (ECF No. 43 at 9–11). However, in those cases, the agreements were signed after litigation had commenced and there were pending claims for the courts to apply said agreements to, *see, e.g., Thomas*, 2015 U.S. Dist. LEXIS 35134, at *2–3, 9, while here the mediation occurred before any litigation commenced or claims were brought.